# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY- CAMDEN VICINAGE

| | |
|---|---|
| CITY SELECT AUTO SALES, INC., a new Jersey corporation, individually and as the representative of a class of similarly situated persons, <br><br>              Plaintiff, <br><br>   v. <br><br> BMW BANK OF NORTH AMERICA, INC., BMW FINANCIAL SERVICES NA, LLC, CREDITSMARTS CORP., and JOHN DOES 1-12, <br>             Defendants. | Case No.   13-cv-04595-NLH-JS <br><br> Assigned to the Hon. Noel L. Hillman <br><br> Referred to Magistrate Judge Joel Schneider <br><br> **OPPOSITION OF DEFENDANTS BMW BANK OF NORTH AMERICA AND BMW FINANCIAL SERVICES NA, LLC, TO PLAINTIFF'S SECOND AMENDED MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   FACTUAL BACKGROUND.....................................................................6

    A.   The Parties.......................................................................................6

    B.   The Services and Vendor Agreements.............................................6

    C.   The Unauthorized Facsimile ...........................................................8

    D.   The Creditsmarts Customer Database ............................................11

    E.   The Participating Dealerships' Consent to Receive Facsimiles .........12

    F.   Procedural History.........................................................................14

        1.   The Complaint.....................................................................14

        2.   The District Court's Denial of Class Certification .................15

        3.   The Third Circuit Vacates the Order Denying
            Certification ........................................................................17

        4.   Foley Motors .......................................................................18

        5.   The FCC's Opt-Out Order and the D.C. Circuit's
            Invalidation of the Requirement for Opt-Out Notices on
            Solicited Facsimiles ............................................................20

        6.   Plaintiff's Second Amended Motion For Class
            Certification .......................................................................21

III.  ARGUMENT............................................................................................21

    A.   Legal Standard on a Motion for Class Certification ...........................21

    B.   Common Questions of Law or Fact Do Not Predominate, and a
        Class Action Is Not a Superior Means of Adjudicating
        Plaintiff's Claim, Due to the Pervasive Individual Issues ..................22

1.      Individual Issues Defeat Predominance and Superiority Because Determining Whether Each Facsimile Transmission Was Unsolicited Requires an Individual Inquiry .....................................................................................23

2.      Individual Issues Defeat Predominance and Superiority Because Determining *When* Each Dealership Received the Facsimile Transmission Also Requires an Individual Inquiry .....................................................................................28

3.      Plaintiff's Claims Are Not Typical, and Plaintiff Is an Inadequate Class Representative................................................30

C.      A Class Action Also Is Not a Superior Means of Adjudicating Plaintiff's Claim ..................................................................................31

1.      Recovery for Violations of the TCPA Is More Easily and Efficiently Sought in an Individual Action................................32

2.      The Disproportion of Damages to Actual Harm Warrants Denial of Certification Based on Due Process.........................33

D.      Plaintiff Again Fails to Show That the Putative Class Is Ascertainable ........................................................................................36

IV.      CONCLUSION............................................................................................39

12/22/2017
24208823.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alpha Tech Pet Inc. v. LaGasse, LLC,
   No. 16 C 4321, 2017 WL 5069946 (N.D. Ill. Nov. 3, 2017) .......................25, 27

In re Am. Med. Sys., Inc.,
   75 F.3d 1069 (6th Cir. 1996) ...........................................................................30

Amchem Prods, Inc. v. Windsor,
   521 U.S. 591 (1997)..........................................................................................23

Anderson v. Capital One Bank,
   224 F.R.D. 444 (W.D. Wis. 2004)....................................................................35

Applestein v. Fairfield Resorts,
   No. 0004 SEPT.TERM 2007, 2009 WL 5604429 (Md. Ct. Spec.
   App. July 8, 2009)..............................................................................................33

Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n,
   852 F.3d 1078 (D.C. Cir. 2017)...............................................................2, 20, 24

Bridgeview Health Care Center, Ltd. v. Clark,
   816 F.3d 935 (7th Cir. 2016) ............................................................................19

Brodsky v. HumanaDental Ins. Co.,
   __ F. Supp. 2d __, No. 10-cv-03233, 2017 WL 3704824 (N.D. Ill.
   Aug. 28, 2017) ...........................................................................................25, 26

Broussard v. Meineke Disc. Muffler Shops, Inc.,
   155 F.3d 331 (4th Cir. 1998) ............................................................................30

Byrd v. Aaron's Inc.,
   784 F.3d 154 (3d Cir. 2015) .............................................................................18

Carrera v. Bayer Corp.,
   727 F.3d 300 (3d Cir. 2013) .............................................................................36

CE Design, Ltd. v. Mortg. Exch., Inc.,
   872 N.E.2d 1056 (Ill. App. Ct. 2007)...............................................................32

12/22/2017
24208823.1

City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc.,
  867 F.3d 434 (3d Cir. 2017) ........................................................................*passim*

City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc.,
  No. CV 13-4595 (NLH/JS), 2015 WL 5769951 (D.N.J. Sept. 29,
  2015) ......................................................................................................16, 17, 28

Comcast Corp. v. Behrend,
  569 U.S. 27 (2013)...........................................................................................23

In re Copper Antitrust Litig.,
  196 F.R.D. 348 (W.D. Wis. 2000).....................................................................35

Deiter v. Microsoft Corp.,
  436 F.3d 461 (4th Cir. 2006) ...........................................................................30

Foley Motors, Inc. v. BMW Bank of North America, Inc.,
  No. 1:16-cv-01044 (C.D. Ill. filed Feb. 4, 2016).........................................*passim*

Forman v. Data Transfer, Inc.,
  164 F.R.D. 400 (E.D. Pa. 1995)..................................................................33, 36

Frickco Inc. v. Novi BRS Enters., Inc.,
  No. 10-10626, 2011 WL 3329480 (E.D. Mich. Aug. 3, 2011) .........................26

G.M. Sign, Inc. v. Brink's Mfg. Co.,
  No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) .............................26

Grandalski v. Quest Diagnostics Inc.,
  767 F.3d 175 (3d Cir. 2014) .............................................................................22

Hayes v. Wal-Mart Stores, Inc.,
  725 F.3d 349 (3d Cir. 2013) .............................................................................16

Helms v. ConsumerInfo.com, Inc.,
  236 F.R.D. 561 (N.D. Ala. 2005) .....................................................................35

Hillis v. Equifax Consumer Servs., Inc.,
  237 F.R.D. 491 (N.D. Ga. 2006) ......................................................................34

In re Hydrogen Peroxide Antitrust Litig.,
  552 F.3d 305 (3d Cir. 2008) .............................................................................22

12/22/2017
24208823.1

Kim v. Sussman,
    No. 03 CH 07663, 2004 WL 3135348 (Ill. Cir. Ct. Oct. 19, 2004) ..................35

Kline v. Coldwell, Banker & Co.,
    508 F.2d 226 (9th Cir. 1974) ...............................................................34

Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc.,
    421 N.J. Super. 268, 23 A.3d 469 (N.J. Sup. Ct. 2011) ......................32

London v. Wal-Mart Stores, Inc.,
    340 F.3d 1246 (11th Cir. 2003) ..........................................................35

Marcus v. BMW of North America, LLC,
    687 F.3d 583 (3d Cir. 2012) ............................................16, 22, 36, 38

Miller v. Painters Supply & Equip. Co.,
    No. 95614, 2011 WL 3557018 (Ohio Ct. App. Aug. 11, 2011)........................26

In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.,
    526 F. Supp. 887 (N.D. Cal. 1981)......................................................34

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
    148 F.3d 283 (3d Cir. 1998) ...............................................................22

Ratner v. Chem. Bank N.Y. Tr. Co.,
    54 F.R.D. 412 (S.D.N.Y. 1972) ..........................................................34

Reyes v. Netdeposit, LLC,
    802 F.3d 469 (3d Cir. 2015) ...............................................................22

In the Matter of Rules & Regulations Implementing the Telephone
Consumer Protection Act of 1991,
    30 F.C.C. Rcd. 8,598 (Aug. 28, 2015)..........................................20, 23

Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.,
    863 F.3d 460 (6th Cir. 2017) ......................................................*passim*

Simon v. Healthways, Inc.,
    No. CV1408022BROJCX, 2015 WL 10015953 (C.D. Cal. Dec. 17,
    2015) ..................................................................................................26

St. Louis, Iron Mt. & S. Ry. Co. v. Williams,
    251 U.S. 63 (1919)..............................................................................34

In re Trans Union Corp. Privacy Litig.,
    211 F.R.D. 328 (N.D. Ill. 2002)............................................................................35

U.S. v. Citrin,
    972 F.2d 1044 (9th Cir. 1992) ...........................................................................34

Van Patten v. Vertical Fitness Grp., LLC,
    847 F.3d 1037 (9th Cir. 2017) ...........................................................................27

Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.,
    274 F.R.D. 229 (S.D. Ill. 2011) .........................................................................33

Wilson v. Am. Cablevision of Kan. City, Inc.,
    133 F.R.D. 573 (W.D. Mo. 1990)......................................................................35

**Statutes**

47 U.S.C. § 227 ..............................................................................................1, 2, 15

**Rules**

Fed. R. Civ. P. 23 ...................................................................................*passim*

**Regulations**

47 C.F.R. § 64.1200 .......................................................................................15, 20

**Other Authorities**

William B. Rubenstein & Alba Conte, Newberg on Class Actions (5th
    ed. 2011) ............................................................................................................36

## I.     <u>INTRODUCTION</u>

In this action, plaintiff City Select Auto Sales, Inc. ("Plaintiff") alleges that defendant Creditsmarts Corp. ("Creditsmarts") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by sending a single-page fax to Plaintiff and other businesses in Creditsmarts' customer database without first obtaining the recipients' prior express invitation or permission and without including a TCPA-compliant "opt out" notice.  Plaintiff seeks to hold defendants BMW Bank of North America ("BMW Bank") and BMW Financial Services NA, LLC ("BMW FS") (together, the "BMW Defendants") liable for the alleged TCPA violations because the fax was supposedly sent on the BMW Defendants' behalf. Plaintiff alleges claims on its own behalf and on behalf of a putative class of all auto dealerships to which Creditsmarts sent the same fax.

This Court previously denied class certification due to Plaintiff's failure to demonstrate that the proposed class is ascertainable.  The Third Circuit reversed, reasoning that because the Creditsmarts customer database had not been produced, it was unclear whether the proposed class is ascertainable under the Third Circuit's ascertainability standard.  The Third Circuit directed, on remand, that the database be produced and that the Court reconsider the issue.  The Third Circuit did not determine that a class could be certified or address any of the elements required for class certification beyond ascertainability.

By its Second Amended Motion for Class Certification (the "Motion"), Plaintiff again seeks to certify a class under Federal Rule of Civil Procedure 23(b)(3). As before, Plaintiff fails to meet its burden of establishing each of the elements required to obtain certification under Rule 23. A failure to satisfy each of the elements is fatal. Moreover, Plaintiff once again fails to show that the proposed class is ascertainable. The Motion should be denied.

*First*, Plaintiff fails to establish the requisite elements of predominance and superiority. After briefing was completed on Plaintiff's prior certification motion, the Federal Communications Commission ("FCC") issued an order waiving the opt-out notice requirement for solicited facsimile advertisements sent prior to April 30, 2015.[1] Subsequently, the D.C. Circuit invalidated the opt-out notice requirement for solicited facsimiles in its entirety, concluding that the TCPA requires such notices only for unsolicited facsimiles. See Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n, 852 F.3d 1078, 1083 (D.C. Cir. 2017). Here, putative class members consented to receive facsimiles from Creditsmarts by providing their fax numbers when they became participating dealers, either when on the phone with a Creditsmarts representative or by visiting the Creditsmarts website and enrolling on-line. Providing program guidelines and updates by

---

[1] A "solicited" facsimile is one sent with "prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

facsimile is a standard practice in the auto dealership industry, and when dealerships agreed to receive faxes from Creditsmarts, they understood and agreed that Creditsmarts would send program guidelines and updates by facsimile. Under these context-dependent circumstances, determining whether a particular fax was solicited or unsolicited would require an individual inquiry, defeating certification.

Plaintiff also fails to establish predominance and superiority for the additional reason that determining *when* a fax transmission was received by each class member would similarly require an individual inquiry. Plaintiff's theory of liability as to the BMW Defendants applies only with respect to putative class members that received a fax *after December 10, 2012* (when the BMW Defendants allegedly first learned about the Creditsmarts facsimile). Of the three transmissions at issue—November 29, 2012, December 4, 2012 and December 27, 2012—only one was after December 10, 2012. However, there is nothing in the Creditsmarts database—or any other common evidence—indicating which fax transmission, if any, was received by a particular dealership. Determining which transmission was received would therefore require an individual inquiry, defeating certification for this additional reason.

*Second*, for the same reasons, Plaintiff fails to establish that its claims are typical of those of other putative class members. Because Plaintiff allegedly had no relationship with Creditsmarts and allegedly did not consent to receive faxes at

all, Plaintiff cannot represent dealerships that *did* have business relationships with Creditsmarts and *did* consent to receive faxes.  Additionally, because Plaintiff bases its own claim against the BMW Defendants in large part on the fact that the fax was transmitted to it on December 27, 2012, approximately two weeks after the BMW Defendants first learned of it, Plaintiff is inadequate to represent dealerships that received the fax *before* the BMW Defendants first learned of it.

*Third*, superiority is lacking on two additional, critical points.  This is not a low-value consumer case.  Instead, Plaintiff is a business, not a consumer, and seeks statutory damages of $500 to $1,500 for each fax transmission sent to members of the putative class.  As such, and because class litigation offers no appreciable benefits, a class action is not a superior means of adjudicating Plaintiff's TCPA claim.  Moreover, the disproportion of damages to actual harm mandates denial of class certification based on due process.

*Finally*, and fatally, Plaintiff once again fails to establish that the class it seeks to certify is ascertainable.  In its opinion, the Third Circuit directed this Court to consider whether circumstantial evidence that the faxes were sent to every dealership in the database, coupled with affidavits, would satisfy the ascertainability standard.  City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc., 867 F.3d 434, 443 n.5 (3d Cir. 2017).  The evidence here demonstrates that it would not.  As detailed below, although Plaintiff seeks to certify a class only with

respect to dealerships that received the fax from Creditsmarts in November or December 2012 (the "November/December Fax"), Creditsmarts also sent a fax on September 25 and 27, 2012 (the "September Fax").  While it is impossible to tell from the database whether or not dealerships that received the September Fax may also have received the November/December Fax, either conclusion defeats certification of Plaintiff's proposed class.  As discussed below, if dealerships received only one transmission, the evidence shows that the database is fatally over-inclusive because the November/December Fax was not sent to nearly 25% of the dealerships in the database, and ascertainability cannot be established.  On the other hand, if dealerships received more than one fax, there is no evidence as to the precise degree of over-inclusiveness.  Having proposed to identify class members through affidavits, Plaintiff bore the burden of demonstrating that the degree of over-inclusiveness in the database is not so high as to prevent certification.  Plaintiff failed to meet its burden to do so.  Accordingly, the Court's prior rejection of Plaintiff's proposal to have class members self-identify through affidavits was correct, and the Motion should also be denied on this basis.

For all of these reasons, each of which standing alone precludes certification, Plaintiff's Motion should be denied.

24208791.1 12/22/2017
24208823.1

## II.   FACTUAL BACKGROUND

### A.   The Parties

Plaintiff is an auto dealership and New Jersey corporation with its principal place of business in Burlington, New Jersey.  (ECF No. 1 ¶ 6; ECF No. 122-1 at 12.)  BMW Bank offers direct automotive financing through "up2drive," a division of BMW Bank that provides direct loans to consumers.  (Dep. of Jake Thompson[2] 9:20-22, 22:12-16.)  Creditsmarts operates an "indirect business-to-business lending tree model" that connects auto dealerships with lenders offering automobile financing to the dealerships' customers.  (Dep. of Sean Ryan[3] 226:10-227:11.)

### B.   The Services and Vendor Agreements

In early 2012, Creditsmarts entered into a Master Professional Services Agreement (the "MPSA") and an up2drive/Vendor Marketing Agreement (the "Vendor Agreement") with BMW FS.  (Ryan Dep. 230:25-231:21 & Ex. A (Garcia Decl. Ex. B).)  The Vendor Agreement explains that Creditsmarts "offers potential borrowers the opportunity to complete a simple application form" so that credit

---

[2] Mr. Thompson is the Online Business Manager for up2drive.  Copies of the cited pages of Mr. Thompson's deposition testimony are attached as Exhibit A to the Declaration of Raymond A. Garcia ("Garcia Decl.").

[3] Mr. Ryan is the President and sole shareholder of Creditsmarts.  Copies of the cited pages of Mr. Ryan's deposition testimony are attached as Exhibit B to the Garcia Declaration.

information may be provided to lenders and "desires to match qualified customers with the appropriate lender by evaluating whose credit profile passes the minimum credit parameters established by up2drive[.]"  (Ryan Dep. Ex. B (Garcia Decl. Ex. B).)  Under the terms of the Vendor Agreement, Creditsmarts' principal responsibilities were:

> 1) . . . establish[ing] electronic systems to permit customers to communicate with up2drive through mutually agreed secure lines of communication[; and]
>
> 2) . . . process[ing] all application forms using the minimum credit parameters established by up2drive and the information obtained ("Customer Information") from the application form including the customer's credit history, that will provide sufficient data to determine whether the customer may qualify for any loan programs offered from by [sic] up2drive.

(Id.)  Pursuant to the MPSA, it was "understood and agreed that [Creditsmarts] shall perform the Services as an independent contractor, and [Creditsmarts] and its employees shall not be considered employees of BMW FS for any purpose whatsoever."  (Id. Ryan Dep. Ex. A (Garcia Decl. Ex. B).)  Neither the MPSA nor the Vendor Agreement identify marketing or solicitation services to be provided by Creditsmarts on behalf of BMW FS.  (Ryan Dep. Exs. A, B (Garcia Decl. Ex. B).)  Indeed, neither up2drive nor BMW FS promote their services through facsimile

advertisements.  (Thompson Dep. 103:23-104:5 (Garcia Decl. Ex. A); Dep. of

Pawan Murthy[4] 55:9-11.)

## C.    The Unauthorized Facsimile

In late 2012, without the BMW Defendants' knowledge or consent,

Creditsmarts composed a single-page fax containing information about the

up2drive financing program.  (See Thompson Dep. 104:13-105:22 & Ex. 2 (Garcia

Decl. Ex. A); Ryan Dep. 213:23-214:13, 235:18-22 (Garcia Decl. Ex. B).)

Without the BMW Defendants' knowledge or consent, on three occasions in

November and December 2012, Creditsmarts caused the fax to be transmitted by

Westfax, Inc. ("Westfax"), a fax broadcasting service, a total of 20,989 times.

(Thompson Dep. 105:7-22 & Ex. 2 (Garcia Decl. Ex. A); Dep. of Barry Clark[5]

52:16-18.)

These were not the only unauthorized fax transmissions by Creditsmarts,

however.  As alleged in a separate action filed in the Central District of Illinois,

Foley Motors, Inc. v. BMW Bank of North America, Inc., No. 1:16-cv-01044

(C.D. Ill. filed Feb. 4, 2016) (discussed below), a fax promoting up2drive was also

---

[4] Mr. Murthy is the General Manager of Online Business for up2drive.  Mr. Ryan
is the President and sole shareholder of Creditsmarts.  The cited pages of Mr.
Murthy's deposition testimony are attached as Exhibit C to the Garcia Declaration.

[5] Mr. Clark is the President of Westfax.  Copies of the cited pages of Mr. Clark's
deposition testimony are attached as Exhibit D to the Garcia Declaration.

sent by Creditsmarts in September 2012.  (<u>Foley Motors</u> ECF No. 1-1.)[6]  The difference between the two facsimiles is the first line of text, which reads "up2drive is the newest division of BMW Bank of North America" in the September Fax and "BMW Bank of North America up2drive" in the Facsimile in November/December Fax.  (Compare ECF No. 1 Ex. A <u>with</u> <u>Foley Motors</u> ECF No. 1 Ex. A.)  A Westfax invoice introduced in <u>Foley Motors</u> indicates that the September Fax was transmitted a total of 6,731 times.  (<u>Foley Motors</u> ECF No. 37-11; <u>see also</u> <u>Foley Motors</u>, Opinion & Order, ECF No. 40 at 4 (listing all facsimile transmissions).)  Thus, the following fax transmissions were made through Westfax by Creditsmarts:

| Date | Number of Transmissions | Name on Invoice |
|------|-------------------------|-----------------|
| 9/25/2012 | 3,321 | Nationwide BMW – Nationwide part 1 |
| 9/27/2012 | 3,410 | Nationwide BMW – Nationwide part 2 |
| 11/29/2012 | 5,480 | BMW Fax 11.29.12 – Super List Part 2 |
| 12/4/2012 | 5,107 | BMW Fax 12.03.12 – Super List Part 1 |
| 12/27/2012 | 10,402 | BMW Fax 12.27.12 – Super List |

---

[6] Brian J Wanca, of the firm Anderson & Wanca, was counsel of record for the plaintiff in <u>Foley Motors</u>.  Mr. Wanca is listed as counsel in the Complaint and the Amended Motion for Class Certification in this action.  (ECF Nos. 1, 65.)

24208791.1 12/22/2017
24208823.1

(Id.; Dep. of Alex Gomez[7] Exs. 4-6.)

In December 2012, the BMW Defendants first learned about the November/December Fax when an independent used car dealership brought it to the attention of Jaime Magpuri.  (Dep. of Jaime Magpuri[8] 7:6-14, 15:13-16, 16:8-12 & Ex. 2 (Garcia Decl. Ex. F).)  Mr. Magpuri provided a copy of the fax to Mr. Murthy of up2drive.  (Id. at 16:20-24, 23:4-8 & Exs. 1, 2.)   Mr. Magpuri described the fax as a "flier" he encountered at a dealership.  (Id. at 15:9-13 & Ex. 2.)

At no time did Creditsmarts inform the BMW Defendants of any fax or email marketing efforts being conducted by Creditsmarts, and the BMW Defendants therefore were unaware of any such efforts.  Moreover, the only email marketing conducted by Creditsmarts was an email with an instructional image on how to deposit up2drive checks, which was sent only "to some dealerships that are friends of [Mr Ryan] personally" and which inadvertently was posted to Creditsmarts's Facebook page.  (Ryan Dep. 30:10-15, 71:7-24 & Ex. 14 (Garcia Decl. Ex. B).)

---

[7] Mr. Gomez is a former Creditsmarts employee and was identified by Mr. Ryan as the individual who sent the facsimiles at issue.  Copies of the cited pages of Mr. Gomez's deposition testimony are attached as Exhibit E to the Garcia Declaration.

[8] Mr. Magpuri is the former Sales and Marketing Manager for Alphera, a separate division of BMW FS.  Copies of the cited pages of Mr. Magpuri's deposition testimony are attached as Exhibit F to the Garcia Declaration.

**D.      The Creditsmarts Customer Database**

The Creditsmarts customer database is a database of auto dealerships that have registered to receive information from Creditsmarts, including by fax, about auto financing offered by various lenders.  (See Ryan Dep. 16:9-13, 53:18-54:5 (Garcia Decl. Ex. B).)  The database includes only dealerships that have registered to receive information from Creditsmarts and is not used for marketing purposes. (Ryan Decl. ¶¶ 2, 4-6; Ryan Dep. 205:25-206:5, 224:22-225:5 (Garcia Decl. Ex. B).)  The Creditsmarts customer database is a continually changing, "dynamic" document, with Creditsmarts' customers regularly added and deleted.  (Ryan Dep. 136:14-138:8 (Garcia Decl. Ex. B.).)  Plaintiff alleges that it received the November/December Fax on December 27, 2012, despite not having an established business relationship with Creditsmarts.  (ECF No. 1 ¶¶ 13, 45.) Plaintiff claims that it "never consented to receive faxes from . . . Creditsmarts and "has no business relationship with . . . Creditsmarts."  (ECF No. 122-1 at 13.)

There is no evidence of how many dealerships were in the database when the November/December Fax was sent.  Neither Creditsmarts nor Westfax has any records identifying the dealerships to which the November/December Fax was transmitted.  (Id. Ryan Dep. 219:2-5 (Garcia Decl. Ex. B); Clark Dep. 113:1-5 (Garcia Decl. Ex. D).)  Creditsmarts preserved its customer database in February 2014, when the database included approximately 18,000 dealerships, but the

database has contained as many as 31,000 dealerships.  (Ryan Dep. 136:14-21, 137:12-16, 211:11-18 (Garcia Decl. Ex. B).)

Plaintiff contends that the Creditsmarts database, which was produced to Plaintiff following remand, still includes 16,702 dealerships with a fax number to which the November/December Fax could have been sent.  (ECF No. 22-1 at 5.)

## E.    The Participating Dealerships' Consent to Receive Facsimiles

As explained by Creditsmarts' President, Mr. Ryan, Creditsmarts markets its services to dealerships through telemarketing, which is conducted both in-house and by vendors.  (Ryan Dep. 158:1-9, 160:17-161:11 (Garcia Decl. Ex. B).) Creditsmarts' marketing database is separate from its customer database.  (Id. at 126:7-25.)  Creditsmarts' customer database is not used for marketing.  (Ryan Decl. ¶ 2.)

When marketing its services to prospective dealerships, a representative will place a call to a potential customer and request an email address or fax number to provide additional information about Creditsmarts.  (Ryan Decl. ¶ 3 & Ex. A.)  If the potential customer appears to be interested, the first call is followed by a second call from a Creditsmarts regional manager.  (Id.)  On the follow-up call, the customer is told about how Creditsmarts' business and loan application process works.  (Id.)  Dealerships that choose to participate are required to provide various information, including a fax number to receive communications from Creditsmarts.

-12-

(Id.)  This information, including the fax number, may be provided over the phone or by the dealer visiting the Creditsmarts website and filling out an online application.  (Id.)  Creditsmarts uses a call script only for the first telemarketing contact.  Follow-up calls from the regional manager are not scripted.  (Ryan Dep. 178:3-13, 192:14-25 (Garcia Decl. Ex. B).)

Creditsmarts customers can have various statuses, which are reflected in the customer database, including paying subscribers, "no credit" subscribers (who have access to the Creditsmarts system but do not receive all services), free trial subscribers (who receive the same services as paying subscribers) and "inactive" subscribers (typically subscribers whose free trial has expired and who are not presently able to submit credit applications).  (Id. at 161:17-163:22, 173:10-22.)  All dealerships are required to provide a fax number at enrollment to become a participating dealership, although they can later elect not to receive faxes.  (Id. at 205:25-206:15; Ryan Decl. ¶¶ 4-6.)  Thus, unless Creditsmarts' customer database indicates that the dealership has elected not to receive faxes, the very fact that a dealership is in Creditsmarts' system indicates that a dealership agreed to accept information by facsimile.  (Id. at 205:25-206:15, 224:22-225:5; Ryan Decl. ¶ 6.)

Both Ryan and Gomez testified at deposition that the November/December Fax was a "program update."  (Ryan Dep. 86:22-87:3 (Garcia Decl. Ex. B); Gomez Dep. 20:4-5 (Garcia Decl. Ex. E).)  As Ryan explained, program updates include

-13-

program guidelines such as maximum mileage, loan to value and other things that auto dealerships need to know when discussing finance options with their customers.  (Ryan Dep. 16:15-18 (Garcia Decl. Ex. B).)  Program updates would also advise dealerships about new lenders that are available.  (Id. at  59:1-4.) According to Ryan, most program updates would target a specific region rather than all dealerships in the customer database.  (Id. at 120:1-9.)  Ryan further testified that providing program guidelines and updates by facsimile is standard in the auto dealership industry.  (Id. at 205:21-206:5; see also Ryan Decl. ¶ 5.)  Thus, when dealerships agreed to receive faxes from Creditsmarts, they understood that Creditsmarts would send program guidelines and updates by facsimile.  (Ryan Decl. ¶ 5.)  However, Creditsmarts was specifically directed ***not*** to provide dealerships with program updates, by facsimile or otherwise, for up2drive.  (Ryan Dep. 103:16-23, 235:2-12 (Garcia Decl. Ex. B).)

## F.   Procedural History

### 1.   The Complaint

Plaintiff filed its Class Action Complaint on July 30, 2013, asserting claims against the BMW Defendants and Creditsmarts for violation of the TCPA and common-law conversion.  (ECF No. 1.)  On November 12, 2013, the Court approved the parties' stipulated dismissal of Plaintiff's claim for conversion, leaving only Plaintiff's claim in Count I for violation of the TCPA.  (ECF No. 31.)

Plaintiff's TCPA claim alleges that Creditsmarts and the BMW Defendants violated the TCPA by: (1) sending unsolicited facsimile advertisements in violation of 47 U.S.C. § 227(b)(1)(C); and (2) sending facsimile advertisements without including a statutorily compliant opt-out notice in violation of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).  (ECF No. 1 ¶¶ 31-40; ECF No. 122-1 at 16.)

### 2.     The District Court's Denial of Class Certification

By motion dated January 15, 2015, Plaintiff sought certification of the following class pursuant to Rule 23(b)(3):

> All auto dealerships that were included in the Creditsmarts database on or before December 27, 2012, with fax numbers identified in the database who were sent one or more telephone facsimile messages between November 20, 2012 and January 1, 2013, that advertised the commercial availability of property, goods or services offered by "BMW Bank of North America."

(ECF No. 65 at 1.)

In opposition to the motion, the BMW Defendants argued that, under established Third Circuit precedent, the putative class was not ascertainable because Plaintiff failed to propose an administratively feasible mechanism by which recipients of the November/December Fax could be identified.  (See ECF No. 70 at 5-11.)  The BMW Defendants submitted uncontroverted evidence that no records existed showing which specific dealerships had received facsimiles from Creditsmarts during the relevant time period.  (See Ryan Dep. 219:2-5 (Garcia

-15-

Decl. Ex. B); id. Clark Dep. 113:1-5 (Garcia Decl. Ex. D).)  Among other things,

the Creditsmarts database did not identify which dealerships had been selected to

receive any facsimiles.  (Ryan Dep. Ex. 23 (Garcia Decl. Ex. B).)  Further, as

discussed above, although Creditsmarts preserved the database as of February

2014, it previously was a living and evolving document from which dealerships

were regularly added and removed.  (Id. at 137:12-16.)  Thus, there was no

evidence that all recipients of the November/December Fax were included in the

database preserved for litigation in February 2014.  (Id. at 136:5-138:8.)

        In response, Plaintiff argued that affidavits could be submitted by auto

dealerships claiming to have received the November/December Fax and that these

affidavits, combined with inclusion of an auto dealership's fax number within the

database as preserved in 2014, would be sufficiently reliable evidence to ascertain

the class.  (See ECF No. 65-1 at 17-19.)  This Court rejected Plaintiff's argument,

holding that, "after carefully considering the Third Circuit case law, the Court

cannot conclude that Plaintiff has met its burden of demonstrating that the class is

ascertainable." City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc., No. CV

13-4595 (NLH/JS), 2015 WL 5769951, at *7 (D.N.J. Sept. 29, 2015), vacated in

part, 867 F.3d 434 (3d Cir. 2017).   The Court noted that, similar to the facts in

Marcus v. BMW of North America, LLC, 687 F.3d 583 (3d Cir. 2012), and Hayes

v. Wal-Mart Stores, Inc., 725 F.3d 349 (3d Cir. 2013), there was some evidence of

the "potential universe of class members."  City Select, 2015 WL 5769951, at *8.

However, there was no evidence that every fax number contained within the

database had received the November/December Fax.  See id.  This Court further

found that while certain dealerships appearing in the database could be eliminated

from the putative class, there was "no method for determining which of the

remaining customers would have been sent the . . . fax."  Id.  Accordingly, the

Court concluded that there was no objective way of identifying class members, and

that Plaintiff "fail[ed] to demonstrate that the class is ascertainable."  Id. at *9.  On

September 29, 2015, an order entered denying Plaintiff's motion for class

certification.  (ECF No. 101.)

### 3.     The Third Circuit Vacates the Order Denying Certification

On December 1, 2015, the Third Circuit granted Plaintiff permission to

appeal the Court's order denying class certification.  (ECF No. 105.)  On August

16, 2017, after briefing and oral argument, the Third Circuit vacated the Court's

order denying class certification and remanded.  See City Select, 867 F.3d 434.

In its opinion, the Third Circuit reaffirmed the ascertainability standard

applied by this Court in denying class certification, holding that for a Rule 23(b)(3)

class to be ascertainable, a plaintiff must show that "(1) the class is 'defined with

reference to objective criteria'; and (2) there is 'a reliable and administratively

feasible mechanism for determining whether putative class members fall within the

class definition.'" Id. at 439 (quoting Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d

Cir. 2015)).  In particular, the Third Circuit held that "[a]ffidavits from potential

class members, standing alone, without 'records to identify class members or a

method to weed out unreliable affidavits,' will not constitute a reliable and

administratively feasible means of determining class membership. . . .  However,

. . . [a]ffidavits, in combination with records or other reliable and administratively

feasible means, can meet the ascertainability standard." Id. at 441 (quoting Byrd,

784 F.3d at 170–71).

Ultimately, the Third Circuit took "no position on whether the level of

individualized fact-finding in this case is administratively infeasible" because the

Creditsmarts database had not been produced and was not part of the record,

holding that, "[w]ithout further information about the Creditsmarts database, there

was not an adequate record on which to base the conclusion that the class was not

ascertainable . . . ." Id. at 442.

### 4.   **Foley Motors**

On February 4, 2016, plaintiff Foley Motors, Inc. filed a putative class

action against the BMW Defendants and Creditsmarts in the Central District of

Illinois, asserting claims essentially identical to those asserted in this action.  (See

Foley Motors, No. 1:16-cv-01044, ECF No. 1.)  Like Plaintiff here, plaintiff in

Foley Motors alleged that Creditsmarts violated the TCPA by sending facsimiles to

-18-

Creditsmarts customers without prior express permission or consent and by failing to include a TCPA-compliant opt-out notice in the facsimiles.  Plaintiff claimed to have received the September Fax, which was attached as an exhibit to plaintiff's complaint, rather than the November/December Fax.  (Id. ¶¶ 34-35 & Ex. A.)

On September 22, 2017, the Foley Motors court granted summary judgment to the BMW Defendants, finding that they could not be held vicariously liable for the sending of the September Fax.  Foley Motors, Opinion & Order at 6-16, ECF No. 40.  Applying an agency analysis under Bridgeview Health Care Center, Ltd. v. Clark, 816 F.3d 935, 938 (7th Cir. 2016) (holding that whether a party is one "on whose behalf" a facsimile is sent should be determined by applying an agency analysis), and recognizing that the Seventh Circuit's clarification of the proper standard in Bridgeview was not available when this Court entered its September 29, 2015 order, the Foley Motors court found that Creditsmarts did not have either express or implied authority to send the September Fax on behalf of the BMW Defendants.  Id. at 6-7.  The court rejected a theory of liability based on ratification, finding Bridgeview controlling and also noting that any ratification or acquiescence "would only implicate the faxes transmitted on December 27, 2012." Id. at 13.  The court also rejected a ratification theory of liability based on a general agency, finding (among other things) that Creditsmarts retained significant authority over its own personnel and that there was no evidence of the BMW

Defendants' control over "the manner and means by which Creditsmarts did its work."  Id. at 15-16.

### 5.    The FCC's Opt-Out Order and the D.C. Circuit's Invalidation of the Requirement for Opt-Out Notices on Solicited Facsimiles

On August 28, 2015, before this Court entered its order denying certification but after briefing was completed, the FCC issued an order in In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd. 8,598 (Aug. 28, 2015) (the "Opt-Out Order"), granting Creditsmarts a waiver relieving it from complying with the FCC regulation, 47 C.F.R. § 64.1200(a)(4)(iv), which required opt-out notices to be included on **solicited** as well as unsolicited facsimiles. The waiver expressly applied to facsimiles sent prior to April 30, 2015 "where the fax sender had obtained the prior express invitation or permission of the recipient to receive the fax advertisement."  (See [SA018].)

Subsequently, the United States Court of Appeals for the District of Columbia held that, because the TCPA itself does not require (and did not authorize the FCC to require) opt-out notices on **solicited** facsimiles, the FCC exceeded its authority in promulgating 47 C.F.R. § 64.1200(a)(4)(iv) and invalidated the regulation.  See Bais Yaakov, 852 F.3d at 1083.  The D.C. Circuit's decision in Bais Yaakov is binding precedent both within and outside the D.C. Circuit.  See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 467 (6th Cir. 2017), as corrected on denial of reh'g en banc (Sept. 1,

2017).  Because the requirement for an opt-out notice applies only to ***unsolicited***

facsimiles, a finding that the November/December Fax here was solicited would be

dispositive of Plaintiff's claim, as well as the claims of any putative class members

that solicited the fax.

### 6.       Plaintiff's Second Amended Motion For Class Certification

By the instant Motion, Plaintiff proposes to certify a class under Federal

Rule of Civil Procedure 23(b)(3) as follows:

> All auto dealerships with fax numbers in the Creditsmarts database on
> or before December 27, 2012, that were sent one or more telephone
> facsimile messages between November 20, 2012 and January 1, 2013,
> stating in part:

> 

> **BMW Bank of North America up2drive**
> **Attention All Independents !!**
> UpToDrive is looking for
> your <u>BUSINESS !!</u>

> 

(ECF No. 122 at 1 (emphasis in original).)[9]

## III.   <u>ARGUMENT</u>

### A.    Legal Standard on a Motion for Class Certification

Pursuant to Federal Rule of Civil Procedure 23(a), any proponent of a

proposed class must specifically demonstrate: "(1) numerosity; (2) commonality;

---

[9] The class definition in Plaintiff's Motion differs from the class definition in the
Complaint and also from that of the class that Plaintiff previously sought to certify.
(<u>See</u> ECF No. 1 ¶ 21; ECF No. 65 at 1.)  The new definition excludes the
September Fax both because the fax falls outside the specified date range and
because it has a different first line of text.

(3) typicality; and (4) adequacy of representation." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 308-09 (3d Cir. 1998). Further, under Rule 23(b)(3), the Court "must determine that common questions of law or fact predominate and that the class action mechanism" constitutes "the superior method for adjudicating the case." Id. at 309. "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." Marcus, 687 F.3d at 591 (citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008)). Here, as detailed below, Plaintiff fails to meet its substantial burden to prove all of the all of the elements essential to certification of a claim. Accordingly, Plaintiff's Motion must be denied.

**B.      Common Questions of Law or Fact Do Not Predominate, and a Class Action Is Not a Superior Means of Adjudicating Plaintiff's Claim, Due to the Pervasive Individual Issues.**

To meet the standard for certification under Rule 23(b)(3), common questions of law or fact must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Grandalski v. Quest Diagnostics Inc., 767 F.3d 175,  179 (3d Cir. 2014). A party seeking class certification must do more than simply claim that an issue predominates. See Reyes v. Netdeposit, LLC, 802 F.3d 469, 481 (3d Cir. 2015) ("predominance requires that plaintiffs *show* that their individual injuries are

capable of proof at trial through common evidence and that their damages are

measurable on a classwide basis" (emphasis added) (quoting <u>Comcast Corp. v.</u>

<u>Behrend</u>, 569 U.S. 27, 30 (2013)).  The predominance inquiry "trains on the legal

or factual questions that qualify each class member's case as a genuine

controversy" and "tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation."  <u>Amchem Prods, Inc. v. Windsor</u>, 521

U.S. 591, 594 (1997).

Here, individual issues predominate on two critical points.  First, individual

issues predominate because determining whether particular facsimile transmissions

were solicited or unsolicited will require an individual inquiry.  Second, individual

issues predominate with respect to **when** each putative class member received one

of the three facsimile transmissions at issue.

### 1.   Individual Issues Defeat Predominance and Superiority Because Determining Whether Each Facsimile Transmission Was Unsolicited Requires an Individual Inquiry.

As discussed above, the FCC's Opt-Out Order granted Creditsmarts an

express waiver of liability with respect to facsimiles sent prior to April 30, 2015

"where the fax sender had obtained the prior express invitation or permission of the

recipient to receive the fax advertisement."  (<u>See</u> <u>In the Matter of Rules &</u>

<u>Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 F.C.C. Rcd. At

8612.)  Subsequently, the D.C. Circuit held that the TCPA does not require opt-out

notices on *solicited* facsimiles and invalidated the opt-out notice requirement for solicited facsimiles in its entirety, concluding that the TCPA requires such notices only for unsolicited facsimiles.  See Bais Yaakov, 852 F.3d at 1083; Sandusky, 863 F.3d at 467.  Because the requirement for an opt-out notice applies only to *unsolicited* facsimiles, a finding that the facsimiles at issue here were solicited would be dispositive of Plaintiff's claim, as well as the claims of any putative class members.  Accordingly, as confirmed by substantial recent authority, class certification would be improper under Rule 23(b)(3) due to the predominance of individual issues with respect to liability—namely, whether each class member gave its prior express invitation or permission to receive facsimile transmissions.

The Sixth Circuit's recent opinion in Sandusky, 863 F.3d 460, is on point and compelling here.  In Sandusky, the Sixth Circuit affirmed denial of a motion for class certification where defendant produced evidence that at least some of the 40,343 members of the putative class consented to receive the facsimile at issue by providing their fax numbers to defendant.  Id. at 468-69.  The Sixth Circuit reasoned that, if the "class were certified, the district court would be tasked with filtering out those members to whom [defendant] was not liable—those individuals who solicited the . . . fax," and that "[r]egardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation."  Id. at 468.

-24-

The decision in <u>Alpha Tech Pet Inc. v. LaGasse, LLC</u>, No. 16 C 4321, 2017 WL 5069946 (N.D. Ill. Nov. 3, 2017), also is on point.  In <u>Alpha Tech</u>, defendants preemptively moved to deny certification of a class of fax recipients based on, among other things, testimony from the defendant's director of sales describing the company's practice of "advising customers at the inception of the customer relationship about the option to receive [defendant's] faxes and requesting that customers provide fax numbers for that purpose" and describing defendant's "practice of obtaining consent from some customers orally . . . ."  <u>Id.</u> at *5.  The district court granted the motion, recognizing that the question of consent to receive faxes is inherently context-dependent and that "[n]umerous courts have found that context-dependent questions regarding consent 'preclude certification under Rule 23(b)(3)' on predominance or superiority grounds."  <u>Id.</u> at *4 (citing cases).

In reasoning compelling here, the court in <u>Brodsky v. HumanaDental Ins. Co.</u>, __ F. Supp. 2d __, No. 10-cv-03233, 2017 WL 3704824 (N.D. Ill. Aug. 28, 2017), similarly explained:

> Plaintiff claims that Defendant's faxes did not comply with the TCPA's opt-out notice requirement.  The TCPA, however, does not impose an opt-out notice requirement on "solicited" faxes.  That obligation was created by the Solicited Fax Rule, which is no longer operable here . . . .  Thus, to determine whether any putative member of the proposed class had a TCPA claim, the Court would first be required to determine whether that proposed class

> member "solicited" the faxes it received.  In light of
> controlling precedent (which explains that this inquiry is
> context-dependent) and the facts here (which reflect
> different relationships among and between various
> recipients), the Court holds that individual consent issues
> defeat predominance and superiority, such that class
> treatment is no longer warranted under Rule 23.

Id. at *10.  Many other courts have similarly denied class certification on this

basis.  See, e.g., Simon v. Healthways, Inc., No. CV1408022BROJCX, 2015 WL

10015953, at *8 (C.D. Cal. Dec. 17, 2015) (holding that, in light of FCC waiver,

"[t]he Court cannot and will not engage in hundreds of mini-trials to determine

whether a putative class member provided Defendants his or her or its prior

express permission"); G.M. Sign, Inc. v. Brink's Mfg. Co., No. 09 C 5528, 2011

WL 248511, at *11 (N.D. Ill. Jan. 25, 2011) (denying class certification where

individualized questions predominated because fax recipients consented to receipt

of the faxes); Frickco Inc. v. Novi BRS Enters., Inc., No. 10-10626, 2011 WL

3329480, *1 (E.D. Mich. Aug. 3, 2011) (explaining denial of class certification on

TCPA claims "given the inherent individual issues arising with respect to each

recipient's consent to receive facsimile transmissions"); Miller v. Painters Supply

& Equip. Co., No. 95614, 2011 WL 3557018 at *7-8 (Ohio Ct. App. Aug. 11,

2011) (affirming denial of class certification of TCPA claim because

individualized determination would be required to establish whether the fax was

unsolicited in each case).

Plaintiff appears to inaccurately contend in the Motion that express invitation or permission under the TCPA must relate to specific advertisements. (ECF No. 122-1 at 8, 17.)  Not so.  In interpreting analogous provisions of the TCPA, courts have held that "effective consent is one that *relates* to the same subject matter as is covered by the challenged calls or text messages," and that by providing a telephone number, a recipient also gives express consent to receive any *related* communications."  See Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044, 1046 (9th Cir. 2017) (holding that, by providing his cellular telephone number for a gym membership contract, plaintiff gave prior express consent to receive text messages "related to the reason [plaintiff] gave his number in the first place," including text messages that "were part of a campaign to get former and inactive gym members to return"); see also Alpha Tech, 2017 WL 5069946, at *4-*6 (recognizing that "the question of consent to receive faxes [is] context-dependent," and holding that consent by class members to "receive faxes" "can be fairly understood to cover all faxes sent by defendants, including advertisements").

Here, although Plaintiff claims that it had no business relationship with Creditsmarts and never consented to receive faxes of any kind from Creditsmarts (ECF No. 122-1 at 13), there is substantial evidence that other putative class members consented to receive facsimiles from Creditsmarts by providing their fax numbers.  (Ryan Decl. ¶¶ 3-6; Ryan Dep. 205:21-206:15, 224:22-225:5 (Garcia

Decl. Ex. B).)  Dealerships' express consent included consent to receive

information about financing options available through Creditsmarts, including

program updates like the November/December Fax.  (Id.)

Because the context-dependent question of whether the

November/December Fax was solicited is an inherently individual issue,

predominance and superiority are defeated.  On this basis alone, the Motion should

be denied.

### 2. Individual Issues Defeat Predominance and Superiority Because Determining *When* Each Dealership Received the Facsimile Transmission Also Requires an Individual Inquiry.

In denying the BMW Defendants' motion for summary judgment, this Court

specifically held that the BMW Defendants' knowledge of the facsimile might be

relevant to whether it was sent on their behalf.  See City Select, 2015 WL

5769951, at *11 n.10 ("[M]ore than 10,000 faxes were sent on December 27,

2012—more than two weeks after the BMW Defendants learned about the fax on

December 10, 2012.  Thus, it is possible that the BMW Defendants could have

prevented the additional unauthorized transmission of thousands of faxes had they

confronted Creditsmarts about the fax when they learned of it. . . .  A trier of fact

could conclude from the BMW Defendants' acquiescence that the BMW

Defendants approved of the actions taken by Creditsmarts on their behalf.").

Similarly, in granting summary judgment to the BMW Defendants in Foley

Motors, the court in that case observed that "[t]here are some facts in evidence that seem sufficient to allow a reasonable factfinder to conclude BMW ratified Creditsmarts actions through BMW's knowledge of the faxes and its acquiescence," but this "would only implicate the faxes transmitted on December 27, 2012." Foley Motors, Opinion & Order 13, ECF No. 40.

Individual issues arise here on two related points. As recognized both by this Court and the court in Foley Motors, Plaintiff's theory of liability based on ratification or acquiescence properly applies *only* to the November/December Fax transmitted on December 27, 2012.[10] Even assuming that all putative class members received one of the three November/December Fax transmissions, there is nothing in the database—or any other common evidence—that would indicate the date on which the dealership received it.

Moreover, even if the Creditsmarts database identified all dealerships to which a facsimile was *sent*—which Plaintiff failed to establish—the database nowhere reflects which transmissions were actually *received*. This renders the class unmanageable. See Sandusky, 863 F.3d at 472-73 (affirming denial of certification where fax logs identifying physicians to which faxes were *successfully* sent no longer existed and "having class members submit individual

---

[10] The BMW Defendants dispute that any of the facsimiles were authorized. For the purpose of this Motion, however, the BMW Defendants address the facts as alleged.

affidavits testifying to receipt of the . . . fax—was not feasible," since "the reliability of an individual's recollection of having received a seven-year-old, single-page fax would be dubious at best").

Determining which of the three transmissions each putative class member received would necessarily require an individual inquiry as to each class member, defeating the requirements of predominance and superiority for this additional reason.

### 3. Plaintiff's Claims Are Not Typical, and Plaintiff Is an Inadequate Class Representative.

Because of the intertwined nature of typicality and adequacy, courts frequently consider these elements together.  In re Am. Med. Sys., Inc., 75 F.3d 1069, 1083 (6th Cir. 1996).  Under the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  For typicality, "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim."  Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006).  "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"  Id. at 466 (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998)).

Here, Plaintiff's claims are not typical of those of other putative class members, rendering Plaintiff an inadequate class representative for two reasons. First, because Plaintiff allegedly had no relationship with Creditsmarts and allegedly did not consent to receive facsimiles at all, Plaintiff cannot represent dealerships that *did* have business relationships with Creditsmarts and *did* consent to receive facsimiles.  Second, because Plaintiff bases its own claim against the BMW Defendants in large part on the fact that the November/December Fax was transmitted to it on December 27, 2012, approximately two weeks after the BMW Defendants first learned of it, Plaintiff is inadequate to represent dealerships that received the facsimile *before* the BMW Defendants first learned of it.

## C.   A Class Action Also Is Not a Superior Means of Adjudicating Plaintiff's Claim.

Superiority also is lacking on two critical points in addition to those addressed above.  First, this is not a low-value consumer case, and because class litigation would offer no appreciable benefits, a class action is not a superior means of adjudicating Plaintiff's TCPA claim.  Second, the disproportion of damages to actual harm mandates denial of class certification based on due process.  Again, Plaintiff's failure to satisfy the requisite element of superiority defeats certification.

**1.** **Recovery for Violations of the TCPA Is More Easily and Efficiently Sought in an Individual Action.**

Certification should also be denied here due to a lack of superiority over individual actions, including small-claims actions.  Underscoring this point is the situation here—Plaintiff is a commercial enterprise, and this is not a low-value consumer action.  Rule 23(b)(3) requires the plaintiff to establish that a class action is a superior means of adjudicating its claims.  The combination of the TCPA's damages provision—imposing an award of $500 or $1,500 per facsimile transmission—and the availability of small-claims procedures compels the conclusion that a class action is not superior.

For example, in Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc., 421 N.J. Super. 268, 272-273, 23 A.3d 469 (N.J. Sup. Ct. 2011), the court held that litigating plaintiff's TCPA claim on a class basis was inferior to individual actions because a plaintiff could easily and efficiently enforce the claim in small-claims court and likely in a more cost-effective manner.  See id. at 281 ("[T]he same facts required to prevail on an individual TCPA claim—an unsolicited fax was received from a sender with whom the recipient had no prior business relationship—are identical to the facts that would have to be proven to merely identify a single class member.  We discern no superiority in such a situation." (citation omitted)).

Numerous other courts have similarly held that TCPA claims are inappropriate for class certification.  See, e.g., CE Design, Ltd. v. Mortg. Exch.,

Inc., 872 N.E.2d 1056, 1058 (Ill. App. Ct. 2007) (noting trial court's holding that "a class action was not an appropriate method for the fair and efficient adjudication of the controversy, because when Congress enacted the TCPA, it envisioned individual, small claims litigation, not private class actions with potential recoveries in the millions of dollars"); Applestein v. Fairfield Resorts, No. 0004 SEPT.TERM 2007, 2009 WL 5604429, *10-11 (Md. Ct. Spec. App. July 8, 2009) (affirming denial of certification in TCPA case because Congress envisioned individual consumers enforcing the statutory damages provision in "small claims court or a similar court . . . without an attorney"); Vigus v. S. Ill. Riverboat/Casino Cruises, Inc., 274 F.R.D. 229, 238 (S.D. Ill. 2011) (denying certification because "putative class members who were actually aggrieved by the Casino's acts have a quick, adequate and superior remedy in other more speedy venues such as, for example, a state small claims court"); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 405 (E.D. Pa. 1995) ("A class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements.").

### 2.    The Disproportion of Damages to Actual Harm Warrants Denial of Certification Based on Due Process.

Certification should also be denied on due process grounds due to the disproportionate amount of damages sought.  A statutory penalty violates due process rights "where the penalty prescribed is so severe and oppressive as to be

wholly disproportioned to the offense and obviously unreasonable." U.S. v. Citrin,

972 F.2d 1044, 1051 (9th Cir. 1992) (quoting St. Louis, Iron Mt. & S. Ry. Co. v.

Williams, 251 U.S. 63, 66-67 (1919)).  Accordingly, class certification is not

appropriate where aggregated statutory damages would be wholly disproportionate

to the alleged violations.  See In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab.

Litig., 526 F. Supp. 887, 899-900 (N.D. Cal. 1981) ("A defendant has a due

process right to be protected against unlimited multiple punishment for the same

act. . . .  Common sense dictates that a defendant should not be subjected to

multiple civil punishment for a single act or unified course of conduct which

causes injury to multiple plaintiffs."), rev'd on other grounds, 693 F.2d 847 (9th

Cir. 1982), cert. denied, 459 U.S. 1171 (1983); see also Kline v. Coldwell, Banker

& Co., 508 F.2d 226, 234-35 (9th Cir. 1974) (noting that an antitrust class action

lacks superiority where potential damages "shock the conscience"); Hillis v.

Equifax Consumer Servs., Inc., 237 F.R.D. 491, 507 (N.D. Ga. 2006) (denying

certification where "class damages would be disproportionately large when

compared to Defendants' conduct"); Ratner v. Chem. Bank N.Y. Tr. Co., 54

F.R.D. 412, 416 (S.D.N.Y. 1972) (denying certification where "the proposed

recovery of $100 each for some 130,000 class members would be a horrendous,

possibly annihilating punishment, unrelated to any damage to the purported class

or to any benefit to defendant, for what is at most a technical and debatable

violation of the Truth in Lending Act."); <u>See also</u> <u>London v. Wal-Mart Stores, Inc.</u>, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (class members' claims for restitution would be so disproportionate to actual harm as to prevent certification); <u>Helms v. ConsumerInfo.com, Inc.</u>, 236 F.R.D. 561, 569 (N.D. Ala. 2005) (denying class certification where potential damages could include a refund to nearly every customer who entered a credit-monitoring agreement with defendant since 1998); <u>In re Copper Antitrust Litig.</u>, 196 F.R.D. 348, 360 (W.D. Wis. 2000) (denying certification of claims for treble damages arising from thousands of transactions over a 500-day period); <u>Anderson v. Capital One Bank</u>, 224 F.R.D. 444, 453 (W.D. Wis. 2004) (denying certification where "[t]he potential damages for such a class are wholly out of proportion to the harm done to any of the class members. . . ."); <u>In re Trans Union Corp. Privacy Litig.</u>, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002) (same); <u>Wilson v. Am. Cablevision of Kan. City, Inc.</u>, 133 F.R.D. 573 (W.D. Mo. 1990) (same).

Here, a class award of $500 to $1,500 per transmission plainly would not survive due process scrutiny.  <u>See</u> <u>Kim v. Sussman</u>, No. 03 CH 07663, 2004 WL 3135348, at *2 (Ill. Cir. Ct. Oct. 19, 2004) (denying certification of a class of some 15,000 fax recipients, with statutory damages in the millions of dollars, for "what is at most, a minor intrusion into an individual's daily life," because a class action would not be a "fair and efficient" adjudication of the controversy); <u>see also</u>

Forman, 164 F.R.D. at 405 (holding that "[a] class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements").

Accordingly, Plaintiff's Motion should be denied.

**D.    Plaintiff Again Fails to Show That the Putative Class Is Ascertainable.**

To certify the putative class, Plaintiff also must show, by a preponderance of the evidence, that the class is "currently and readily ascertainable based on objective criteria." Marcus, 687 F.3d at 593; Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013). Critically, the method of determining whether someone is a class member must be "administratively feasible." Marcus, 687 F.3d at 594. "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." Carrera, 727 F.3d at 307-08 (quoting William B. Rubenstein & Alba Conte, Newberg on Class Actions § 3:3 (5th ed. 2011)).

In its opinion, the Third Circuit directed the Court to consider whether circumstantial evidence that the fax was sent to every dealership in the database, coupled with affidavits, would satisfy the ascertainability standard. See City Select, 867 F.3d at 443 n.5. Importantly, the Third Circuit noted that "[t]he amount of over-inclusiveness, if any, of the proposed records is a critical consideration" in determining the ascertainability of the putative class. Id. at 442.

As discussed above, Creditsmarts sent the September Fax on September 25 and 27, 2012, with some 6,731 recipients.  While it is impossible to tell from the database whether or not dealerships that received one of the September Fax transmissions may also have received one of the November/December Fax transmissions, either conclusion is fatal to certification of Plaintiff's proposed class.  As detailed below, if dealerships received only one transmission, the evidence shows that the database is grossly over-inclusive, while if dealerships received more than one, there is no evidence of the precise degree of over-inclusiveness.  In either event, Plaintiff failed to meet its burden of proving that the putative class is ascertainable.

On the one hand, if dealerships received only one transmission, the database is grossly over-inclusive.  If dealerships received only one transmission, then there were at least 27,720 dealerships with fax numbers in the database at the time.  However, only 20,989 dealerships received the November/December Fax.  This means that approximately 24% of the dealerships in the database at the time were not sent the November/December Fax, and there is no manageable way to identify those dealerships.  This is the same scenario that the Sixth Circuit addressed in Sandusky, where the court affirmed denial of certification based on affidavits because 25% of the physicians in defendant's list of potential recipients were known not to have received the facsimile at issue, and—like here—there was

no manageable way to determine which members of the list did not receive it.  See Sandusky, 863 F.3d at 462, 472.  This is precisely the kind of "high degree of over-inclusiveness" that the Third Circuit cautioned would render certification based on affidavits improper.  See City Select, 867 F.3d at 442 & n.4.

On the other hand, if the faxes were sent in separate campaigns (6,731 in September and 20,989 in November and December),[11] the circumstantial evidence that the November/December Fax was distributed to the entire dealer base falls apart.  Plaintiff's supposed "circumstantial evidence" in this regard is that the fax numbers were obtained from the database; the fax was a "program update"; and program updates are sent to all dealerships in the database.  (ECF No. 22-1, at 27-28.)  However, the September 2012 Fax clearly did not go to **all** of the dealers in the database at the time.  Thus, the analysis returns to square one: the evidence offered by Plaintiff simply does not show how many dealerships that were in the database at the time were sent (and received) the November/December 2012 Fax.

As the moving party, Plaintiff bears the burden of proof to establish **all** of the elements of class certification.  Marcus, 687 F.3d at 591.  Here, having proposed to identify class members through affidavits, Plaintiff bore the burden of demonstrating that the "degree of over-inclusiveness" in the database is not so high

---

[11] Or, alternatively, 6,731 in September; 10,587 on November 27 and December 4; and 10,402 on December 27, 2012.

as to prevent certification.  <u>City Select</u>, 867 F.3d at 442 n.4.  Plaintiff failed to meet its burden of doing so.

Accordingly, further to the Third Circuit's direction, this Court's prior rejection of Plaintiff's proposal to have class members self-identify through affidavits was correct.  The Motion should be denied.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the BMW Defendants respectfully request that the Motion be denied in its entirety.

Respectfully submitted,

Dated:  December 22, 2017        By: <u>*/s/ Ryan L. DiClemente*</u>
                                      Ryan L. DiClemente

                                 SAUL EWING ARNSTEIN & LEHR LLP
                                 650 College Road East, Suite 4000
                                 Princeton, New Jersey 08540
                                 Telephone:  (609) 452-5057
                                 Facsimile: (609) 452-6117

                                 STROOCK & STROOCK & LAVAN LLP
                                 Julia B. Strickland (pro hac vice)
                                 jstrickland@stroock.com
                                 2029 Century Park East
                                 Los Angeles, California 90067
                                 Telephone:  (310) 556-5800
                                 Facsimile:   (310) 556-5959

24208791.1 12/22/2017
24208823.1

STROOCK & STROOCK & LAVAN LLP
Raymond A. Garcia (pro hac vice)
rgarcia@stroock.com
180 Maiden Lane
New York, NY 10038
Telephone:  (212) 806-5400
Facsimile:    (212) 806-6006

Attorneys for Defendants
BMW BANK OF NORTH AMERICA and
BMW FINANCIAL SERVICES NA, LLC