## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY – CAMDEN VICINAGE

| | | |
|---|---|---|
| CITY SELECT AUTO SALES, INC, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 13-cv-04595-NLH-JS |
| v. | ) ) | Hon. Noel L. Hillman |
| BMW BANK OF NORTH AMERICA, INC., BMW FINANCIAL SERVICES NA, LLC, CREDITSMARTS CORP., and JOHN DOES 1-12, | ) ) ) ) ) | Magistrate Judge Joel Schneider |
| Defendants. | ) | |

## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT
## OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT ............................................. 1

I.    Background. ...................................................................................... 1

II.    Summary of the Settlement. .......................................................... 4

    A.    Class certification.................................................................. 4

    B.    The Settlement Amount. ...................................................... 5

    C.    Monetary relief to the Settlement Class................................ 5

    D.    Class notice. ......................................................................... 6

    E.    Class members' right to opt out or object................................ 6

    F.    Class Representative incentive award and attorney's fees and expenses. ............................................................................ 6

    G.    Release. ................................................................................ 7

III.    The Settlement Class was notified about the Settlement. .................. 7

IV.    The Court should finally approve the Settlement. ............................. 9

    A.    Certification of the Settlement Class by agreement of the parties was appropriate. ................................................................... 9

    B.    Standard for judicial evaluation and approval of a class action settlement. ........................................................................... 9

    C.    Relevant factors for determining whether a class action settlement is fair, reasonable, and adequate.............................. 10

        1.    Complexity, expense, and duration of the litigation...... 12

        2.    Settlement Class reaction to the Settlement. ................. 13

        3.    The stage of the litigation and amount of discovery. .... 14

        4.    Risks of establishing liability, damages, and maintaining a class through trial......................................................... 14

        5.    Defendants' ability to withstand a greater judgment..... 15

        6.    Range of reasonableness of the Settlement. .................. 15

V.    The attorneys' fees and expenses are reasonable and appropriate..... 17

VI.    The agreed incentive award to Plaintiff is appropriate. ..................... 24

VII.   Conclusion........................................................................... 26

CERTIFICATE OF E-FILING AND SERVICE ................................... 28

# TABLE OF AUTHORITIES

## Cases

*Blum v. Stenson*, 465 U.S. 886 (1984) ..................................................................... 19

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) .................................................... 19

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ..................................... 19, 20

*City Select Auto Sales Inc. v. BMW Bank of North America*, 867 F.3d 434 (3d Cir. 2017) .......................................................................................................... 2, 14, 16

*Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) ........................................... 24

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ......................................... 12

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ................. 24

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .................................... 9

*Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) ...................................................... 10

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) .......... 19

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ............................................ 18, 19

*Girsh v. Jepson*, 521 F.2d 153, 157 (3rd Cir. 1975) .............................................. 11

*Grier v. Chase Manhattan Automotive Finance Co.*, 2000 U.S. Dist. LEXIS 1339 (E.D. Pa.) ............................................................................................................. 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................... 22

*Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130 (N.D. Ill. 1997) ........................................................................................... 13

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163 (S.D.N.Y. 2000) ..................................................................................................................... 13

*In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ................................................................................................................. 22

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) 12

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) .................................................................................................. 25

*In Re Greenwich Pharm. Sec. Lit.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. 1995) 18

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2001) ......... 13

*In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 312 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) .................................................................... 18

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) .................. 17, 18

*In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ..................... 24

*In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) ... 13

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) .............. 9

*In re: Pet Food Products Liability Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) ......... 11

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)................................................... 10

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed.Appx. 880, 883-84 (3d Cir. 2016) ...................................................................................................... 19, 20

*Maher v. Zapata Corp.*, 714 F. 2d 436 (5th Cir. 1983) ............................................ 7

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985) .................................................. 23

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) .................. 13

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ..... 20

*Meijer, Inc. v. 3M,* 2006 U.S. Dist. LEXIS 56744 at *82-83 (E.D. Pa. August 15, 2006)................................................................................................................... 24

*Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982) ............................. 10

*Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210 (E.D. Pa. 1989)................... 18

*Schlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) ................................................ 13

*Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ................... 10

*Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005)........................................ 18

*US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013) ........................................ 19

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983) .............. 7

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992)................... 13

## **Statutes**

28 U.S.C. § 1715................................................................................................... 4

47 U.S.C. § 227...................................................................................................... 1

## **Other Authorities**

C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990) ............................................... 25

## **Rules**

Fed. R. Civ. P. 23.................................................................................................... 4

iv

Fed. R. Civ. P. 23 (e) (1) (C) ................................................................ 9

Federal Rule 23 (e) (2) ...................................................................... 11

**Treatises**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) ............................................................................ 20

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008) ................................................................ 18

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005) ...................................................................................... 7

MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995) ................................. 10

**Regulations**

47 C.F.R. § 64.12000 ........................................................................ 1

## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, City Select Auto Sales, Inc. ("Plaintiff"), on behalf of itself and the class of similarly-situated persons (the "Settlement Class"), requests that the Court enter an order finally approving the terms of the parties' Settlement Agreement ("Settlement" or the "Agreement"). The parties' proposed Final Order and Judgment is attached as Exhibit A and will be submitted electronically as directed by the Court.

## I.    Background.

Plaintiff's Class Action Complaint alleged that defendants BMW Bank of North America, Inc., BMW Financial Services NA, LLC (collectively, the "BMW Defendants"), and Creditsmarts Corp. ("Creditsmarts" and together, with the BMW Defendants, the "Defendants") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by sending unsolicited advertisements by facsimile. *Id.* *See* 47 C.F.R. § 64.12000. The action seeks statutory damages.

At Creditsmarts' direction, a company named Westfax sent the faxes at issue to automobile dealers in Creditsmarts' database (the "Creditsmarts Database"). Based upon the fax broadcaster's invoices produced in discovery, Plaintiff contended that Defendants' advertisements were successfully sent by fax approximately 20,000 times during three fax broadcasts between September 1, 2012 and January 1, 2013 (the "Class Period"). *See* Doc. 122-1, p. 9 (Plaintiff's

1

brief in support of class certification). The Database identifies 16,746 automobile dealers that were (1) added to the Creditsmarts Database on or before the end of the Class Period and (2) have a telephone facsimile number in the Creditsmarts Database. These dealerships are the Settlement Class.

The Court denied Plaintiff's motion for class certification on "ascertainability" grounds regarding which of the dealerships were successfully sent the faxes at issue. On an interlocutory appeal pursuant to Rule 23(f), the Third Circuit reversed and remanded for further consideration by this Court, holding that the ascertainability issue may be solved with individual responses from class members. *See City Select Auto Sales Inc. v. BMW Bank of North America*, 867 F.3d 434 (3d Cir. 2017). On remand from the Third Circuit, Plaintiff filed a *Second Amended Motion for Class Certification* (Doc. 122), Defendants filed their opposition briefs (Docs. 128 and 129), and Plaintiff filed its reply (Doc. 135).

In addition to challenging class certification, the BMW Defendants have vigorously contested their liability for the faxes, arguing they are not liable for faxes sent by Creditsmarts. The Court previously denied the BMW Defendants' motion for summary judgment on this issue. For its part, Creditsmarts argued that it obtained prior express permission to fax the companies in its Database and had an "established business relationship" with them. Doc. 128. Plaintiff argued the evidence of permission was class-wide (testimony by Creditsmarts' owner about

the company's practices) and that the opt-out notices on the faxes didn't strictly comply with the TCPA's requirements (Doc. 135), but again, Defendants have argued the defenses would require individual mini-trials to resolve. And then there's the issue of the missing transmission logs identifying which fax numbers received the faxes at issue, which Defendants argued would require individual proofs of receipt. Again, Plaintiff disagreed.

Before the Court ruled on class certification again, the parties agreed to explore settlement possibilities, and scheduled and attended a full-day mediation with the Hon. James Epstein (Ret.) of JAMS, and participated in subsequent discussions he facilitated. Through these negotiations, the parties reached their proposed Settlement.

The Court preliminarily approved the Settlement on July 8, 2019, after considering Plaintiff's *Agreed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class* and brief in support. (Doc. 160), BMW Defendant's limited opposition (Doc. 161), and Plaintiff's reply (Doc. 162). The Court entered an *Order Preliminarily Approving the Class Action Settlement and Approving the Class Notice* (the "Preliminary Approval Order") (Doc. 163).

As the Preliminary Approval Order required, the Settlement Administrator (a company named Class-Settlement.com, LLC), sent the class notice to the fax numbers in the Creditsmarts Database and also mailed it to the street addresses

3

corresponding to those fax numbers. *See* <u>Exhibit B</u>, Declaration of Dorothy Sue Merryman. No class member objected to the settlement, or requested exclusion from it. *Id*. In short, the class members support approval of the proposed settlement. Additionally, as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), Defendants notified the appropriate federal and state officials about the proposed settlement, and none of them has objected to the settlement either. Doc. 164 (Declaration of Ryan DiClemente).

## II.     Summary of the Settlement.

The key terms of the Settlement are as follows:

### A.     Class certification.

Pursuant to Rule 23, by stipulation of the parties and solely for the purpose of settlement, the Court preliminarily certified the following settlement class:

> All persons in the United States that were sent a facsimile advertising the goods or services of up2drive, BMW Bank of North America, BMW Financial Services NA, LLC, or BMW of North America, transmitted by Creditsmarts on or after September 1, 2012, through January 1, 2013.

Preliminary Approval Order at ¶ 5. Excluded from the class are (1) the BMW Defendants, Creditsmarts, any parent, subsidiary, affiliate, or controlled person of the BMW Defendants or Creditsmarts, as well as their attorneys, officers, directors, agents, servants, or employees, and the

immediate family members of such persons; (2) the named counsel in the Action and any employee of their office or firm; (3) the district and magistrate judges assigned to this Action, including their courtroom staff; (4) anyone whose claim against the Released Parties has been resolved through prior litigation; and (5) all persons who timely and validly request exclusion from the Settlement Class. *Id.*

The Court appointed Plaintiff as the Class Representative and appointed its attorneys (Bock, Hatch, Lewis & Oppenheim, LLC and Sherman, Silverstein, Kohl, Rose & Podolsky, P.C.) as Class Counsel. *Id.*, ¶¶ 7, 8.

## B.    The Settlement Amount.

Defendants agreed to make available a maximum Settlement Amount of $3,765,000.00 (the "Settlement Amount"). The Settlement Amount shall be used to pay class member claims, to pay an incentive payment to the Class Representative, and to pay attorneys' fees and expenses to Class Counsel. Settlement Agreement, Doc. 160-2 ("Agreement"), ¶¶ C(1).

## C.    Monetary relief to the Settlement Class.

Each class member (including Plaintiff) who submitted a timely and valid claim form will be mailed a check for $145.00 for each of its fax numbers in the Creditsmarts Database. *Id.*, ¶ F. The claimant need not

5

possess any copy of the fax at issue, need not remember receiving the fax at issue, need not know anything about Defendants, and need not deny giving express permission to receive faxes. Rather, the claimant must merely identify himself/herself/itself as a member of the Settlement Class by verifying ownership or use of one or more fax numbers in the Creditsmarts Database during the Class Period. *Id.* and Exhibits B(1 and 2) and D(1 and 2) thereto.

**D.    Class notice.**

Pursuant to the terms of the Preliminary Approval Order, the Settlement Administrator caused the approved Class Notice to be sent to the Settlement Class both by mail and by fax. Exhibit B, ¶¶ 9-10, 13-14.

**E.    Class members' right to opt out or object.**

All class members were notified about their right to object to the settlement or exclude themselves from it by September 9, 2019. *Id*, Ex. 1 thereto. No class member objected or opted out. Exhibit B, ¶¶ 15. Class Counsel received no opt-out requests.

**F.    Class Representative incentive award and attorney's fees and expenses.**

As agreed by Defendants, Class Counsel requests that the Court award $15,000 to Plaintiff for its services on behalf of the Class as the Class

Representative, to be paid by Defendants from the Settlement Amount. Furthermore, as agreed by Defendants, Class Counsel requests that the Court award attorney's fees equal to 33.2% of the Settlement Amount ($1,250,000), plus reasonable out-of-pocket expenses of $35,917.01. Agreement, ¶ I. *See* Class Counsel Expenses, Exhibit C.

### G.   Release.

In exchange for the relief provided by the Settlement, the Settlement Class will release all claims that were brought or which could have been brought in this action against Defendants and the other released parties about the facsimiles sent by Defendants during the four-month Class Period: September 1, 2012, through January 1, 2013. Agreement, ¶ H.

### III.   The Settlement Class was notified about the Settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp*., 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Preliminary Approval Order (Doc. 56), the

Settlement Administrator caused the approved class notice to be sent to the class members by both U.S. mail and facsimile. Exhibit B, ¶¶ 9-10, 13-14.

The content of the notice complied with Rule 23 (c) (2) (B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all those things. Exhibit B, Ex. 1.

Further, the claim form for this settlement was a 1-page, easy to read and understand form. *Id*. Each Settlement Class member merely had to provide their contact information and verify ownership of one or more of the subject telephone facsimile numbers during the four-month Class Period. *Id*. The Settlement Class members did not have to provide a copy of a received junk fax or attest to remembering receiving one.

## IV.    The Court should finally approve the Settlement.

### A.    Certification of the Settlement Class by agreement of the parties was appropriate.

In preliminarily approving the Settlement, this Court ruled that class certification appears appropriate. (Doc. 163 at ¶ 5). The absent Settlement Class Members were alerted that this Court certified a settlement class and no one objected. Exhibit B. As a result, class certification is still appropriate because (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff and its attorneys will fairly and adequately protect the interests of the class; and (e) a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

### B.    Standard for judicial evaluation and approval of a class action settlement.

A court should approve a settlement that "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592-93 (3d Cir. 2010). "[A] district court's primary role is to determine whether the settlement is fundamentally fair, reasonable and adequate." *Id. citing In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). *See also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes.").

A district court should not "modify the terms of a voluntary settlement agreement between parties." *Id. citing Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements." *Id*. at 594, *citing Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982). This policy is "especially strong" in class actions. *Id*. at 595.

### C. Relevant factors for determining whether a class action settlement is fair, reasonable, and adequate.

The Third Circuit has articulated 9 relevant factors for assessing the fairness of a proposed class action settlement: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible recovery; and (9) the range of reasonableness of the settlement amount to a possible recovery in light of all the attendant risks of litigation. *In re: Pet Food Products Liability Litig.*, 629 F.3d 333, 350 (3d Cir. 2010), *citing Girsh v. Jepson*, 521 F.2d 153, 157 (3rd Cir. 1975).  Here, each of these factors supports final approval of the Settlement.

New Federal Rule 23 (e) (2), which went into effect December 1, 2018, enumerates similar factors: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, all of these factors are satisfied.

### 1.   Complexity, expense, and duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Further litigation of the case would require a significant commitment of time and financial resources because Plaintiff expects Defendants would continue to contest the appropriateness of class certification, Plaintiff's evidence of fax transmissions, the BMW Defendants' liability for Creditsmarts' faxes, and Creditsmarts' alleged defenses of prior express permission and EBR, which Plaintiff contests. In the absence of settlement, the parties would continue to brief class certification, notify the class if certified, and then participate in a lengthy and expensive trial. All post-trial appellate rights would likely be exercised. Even if successful, class members then would likely be required to prove membership in the class by proving they received one or more of the faxes at issue in 2012 or 2013, as part of a distribution program. The Settlement avoids all this.

The Settlement avoids the uncertainty and delay associated with continuing this hard-fought litigation, instead offering relief to the class members now in exchange for their completion of a simple claim form identifying themselves as members of the class. The Settlement Class can receive significant monetary payments for their receipt of fax advertisements and avoid the uncertainty of

pursuing recovery from Defendants through additional litigation. The Court should finally approve the Settlement because it will minimize the inevitable delay and uncertainties of continued litigation.

### 2.    Settlement Class reaction to the Settlement.

No class member objected to the Settlement or opted out of it. Exhibit B. A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements").

Thus, the class members overwhelmingly support the settlement. *See Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good

indication of the fairness of the settlement"). The lack of any opposition shows a favorable reaction to the Settlement that supports final approval.

### 3. The stage of the litigation and amount of discovery.

Here, the stage of proceedings and amount of discovery support final approval. The parties engaged in extensive discovery and prior briefing on merits issues and on class certification, and were able to make fully-informed decisions prior to agreeing to the settlement terms. The stage of proceedings and amount of discovery support final approval.

### 4. Risks of establishing liability, damages, and maintaining a class through trial.

If the Court certified a contested class over Defendants' objections, then the class would have been required to prove the merits of the claims, including the claim that the BMW Defendants are liable for the faxes Creditsmarts sent, and survive Creditsmarts' defenses of prior express permission and EBR, which Plaintiff disputed. The lack of transmission logs for the faxes would have meant that, even if Plaintiff prevailed at trial, the individual class members most likely would have been required to submit some evidence of having received one or more of the faxes at issue to claim a share of a class judgment. *See City Select Auto Sales Inc. v. BMW Bank of North America*, 867 F.3d 434, 441-42 (3d Cir. 2017).

The Settlement avoids that by offering class members the opportunity to claim a cash award merely by confirming that one or more of the fax numbers in

the Creditsmarts Database was their number from September 1, 2012, through January 1, 2013, when the faxes at issue were sent, without having to remember— or declare—receiving one. Each member who submits a claim will receive a payment of $145 for each of their fax numbers in the Creditsmarts Database. Agreement, ¶ F.

The Settlement was negotiated at arm's-length through a professional mediator, retired Illinois Appellate Court Judge James Epstein of JAMS. In late 2014, the parties had attempted mediation with another mediator, Stephen M. Orlofsky of Blanke Rome LLP, but were unsuccessful.

### 5. Defendants' ability to withstand a greater judgment.

BMW Defendants' ability to pay was not a significant factor, but Creditsmarts has a very limited ability to pay a settlement or judgment, meaning the BMW Defendants' liability defense was a significant factor in securing a settlement.

### 6. Range of reasonableness of the Settlement.

When looking to the range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks of litigation, this Settlement is undoubtedly fair, reasonable, and adequate. As mentioned above, the Settlement provides substantial cash relief to the settlement class. Each claimant will be entitled to $145 for each of their claimed fax numbers. If successful someday under

the TCPA, the person could receive $500. 47 U.S.C. 227. A payment of $145 now is an excellent recovery compared to the level of proofs and the amount of delay anticipated before anybody would received $500 and even then attorney fees and expenses would be subtracted first from the recovery, reducing that eventual $500 to $300 or less, someday.

The lack of Westfax transmission logs identifying which fax numbers actually received the faxes at issue would have provided a basis for Defendants to argue class members should be required to submit evidence of receipt to claim a share of a class judgment, if Plaintiff prevailed at trial. *See City Select*, 867 F.3d at 441-42. For the same reason, proving class members received more than one fax at a particular number—such that they could recover more than one statutory damage award—would be difficult.

Further, there was a risk that the Court would agree with Defendants that the case was ill-suited for class certification or the factfinder would agree with the BMW Defendants that they were not liable for the faxes. As a result, when looking to the range "of the best possible recovery" this Settlement is an excellent result. Furthermore, when looking at the "attendant risks of litigation" this Settlement is an excellent result.

**V.     The attorneys' fees and expenses are reasonable and appropriate.**

Defendants have agreed to pay Class Counsel attorney's fees of 33.2% of the total Settlement Amount ($1,250,000), plus reasonable, out-of-pocket litigation expenses, capped at $80,000, including the $34,985.00 the BMW Defendants already paid for the costs of notice and settlement administration. The settlement notice informed the class members about the parties' agreement on attorneys' fees, and no class member complained or objected. Exhibit B.

In the Third Circuit, courts consider the following factors when assessing the reasonableness of attorneys' fees: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and the awards in similar cases. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). Here, these factors show that the agreed 33.2% fee is well within reason for the work performed and benefit conferred by Class Counsel in this case.

Attorneys' fees equal to one-third of the benefit obtained on behalf of the class is within the approved range in class actions. *Grier v. Chase Manhattan Automotive Finance Co.*, 2000 U.S. Dist. LEXIS 1339 (E.D. Pa.) (awarding fees of 33.33% of settlement amount, noting that because common fund is relatively

small, it is appropriate to award a higher percentage than in cases resulting in substantially larger funds); *In Re Greenwich Pharm. Sec. Lit.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. 1995) (on settlement of $4.375 million, court approves fee of 33% as appropriate, noting in this "much smaller case," a fee award of 33% does not present the danger of providing plaintiff's counsel with the windfall that would accompany a 'megafund' of, for example, $100 million); *Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210 (E.D. Pa. 1989) (on settlement of $179 million, court awards 33% fee on first million and 30% on the remainder); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees). *See also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008).

The Third Circuit has explained that "[t]he percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 312 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999)). Courts have long recognized that the

18

attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill*, 160 F.3d at 363.

It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million), and citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed.Appx. 880, 883-84 (3d Cir. 2016).

The U.S. Supreme Court has noted that in cases like this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In *Boeing,* 444 U.S. at 480, the Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").

"[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum

judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. *See also Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed.Appx. 880, 883-84 (3d Cir. 2016).

The fee award is based upon the entire fund available to be claimed, even when the entire fund is not claimed by class members and the unclaimed remainder reverts to the defendant. *Id. See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."). *See also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

Here, as in *Boeing*, the class members received a class notice with an attached claim form that enabled them "to share the harvest of the lawsuit upon proof of their identity." By identifying themselves, they will receive a check for $145 for each of their claimed fax numbers, without needing to prove up their

claim, possess a copy of one of Defendants' faxes, or remember receiving any fax from Defendants.

Moreover, Class Counsel's request for 33.2% of the available Settlement Amount is consistent with the market rate for TCPA cases. *See, e.g., Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (awarding one third of fund); *Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, Case No. 09-cv-1572 (W.D. Pa. Oct. 9, 2019) (Doc. 149) (same); *13-50 River Road Corp. v. Ansam Commercial Kitchen and Ventilation Specialists, Inc.*, Case No. 16-cv-710 (D. N.J. July 24, 2019) (same); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Case No. 11 CV 11, 2015 WL 12866997 (D. N.J. Jan. 26, 2015) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Tarnow, J.) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D.

Ill. Mar. 4, 2014) (Doc. 243) (same); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (35% of fund); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (one third of fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (same).

Most important, the class notice informed the Settlement Class about the attorneys' fees and no one objected. *See* <u>Exhibit B</u>, ex 1 (class notice, "Class Counsel will ask the Court for 33.2% of the Settlement Amount as fees and additional money to reimburse them for the out-of-pocket expenses they paid to investigate the facts, litigate the case, and negotiate the settlement.") Courts have recognized the lack of objection from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys'

fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

Class Counsel undertook this case on a contingency basis and achieved an excellent result for the Class. Class Counsel have been litigating TCPA class actions since 2003 and have litigated other types of class actions for many more years. They have litigated this case since 2013, including full discovery, merits briefing, class certification and appellate briefing, and two mediations. They were able to apply their unique capabilities to achieve an excellent result in a fair and efficient manner. They always faced risk of nonpayment, not only for their time but also for their out-of-pocket costs. The Court should approve Defendants' agreement to pay Class Counsel attorney fees of $1,250,000—equal to 33.2% of the Settlement Amount—because that amount is within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances. Also, Class Counsel seek reimbursement of $35,917.01 in expenses detailed in the

ledgers submitted as Exhibit C and those expenses were reasonably and necessarily incurred on behalf of the class in the litigation.

## VI.    The agreed incentive award to Plaintiff is appropriate.

Finally, the Court should approve Defendants' agreement to pay $15,000 to Plaintiff as an incentive award for serving as the class representative. A plaintiff who is willing and able to represent the entire class, sit for deposition, and devote time and attention to the case, is crucial for a class action to proceed and for the class to receive anything. Here, Plaintiff was the catalyst for the action being brought and for the Settlement Class's recovery. Plaintiff responded to discovery, sat for a deposition, and participated in mediation. Plaintiff's efforts benefited the Settlement Class.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).  *See also Meijer, Inc. v. 3M,* 2006 U.S. Dist. LEXIS 56744 at *82-83 (E.D. Pa. August 15, 2006); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In*

*re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Here, the parties agreed an award similar to that awarded in other TCPA cases. *See 13-50 River Road Corp. v. Ansam Commercial Kitchen and Ventilation Specialists, Inc*., Case No. 16-cv-710 (D. N.J. July 24, 2019) (Vazquez, J.) ($15,000); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc*., Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same).

Class action suits conserve judicial and litigant resources. C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class

Representative in this case was no exception. But for Plaintiff's initiative and participation, the benefits available to all class members would not have been realized. The Court should approve the parties' agreement regarding Plaintiff's incentive payment, and award the requested amount.

## VII.  Conclusion.

WHEREFORE, Plaintiff, City Select Auto Sales, Inc., respectfully requests that the Court approve the parties' Settlement Agreement and enter the proposed *Final Approval Order*, which was attached as Exhibit C to the Settlement Agreement and is submitted herewith as <u>Exhibit A</u>.

Dated: December 2, 2019                    Respectfully submitted,

                                           CITY SELECT AUTO SALES, INC.,
                                           individually and as the representative
                                           of a class of similarly-situated
                                           persons,

                                    By:    /s/ Alan C. Milstein

Alan C. Milstein
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
East Gate Corporate Center
308 Harper Dr., Ste. 200
Moorestown, N 08057
Telephone: 856/662-0700

Phillip A. Bock
Tod A. Lewis
David M. Oppenheim
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500

## CERTIFICATE OF E-FILING AND SERVICE

I hereby certify that on December 2, 2019, I electronically filed the foregoing using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

/s/ Alan C. Milstein